UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| W. L. B.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-24-1157-CMS |
| ) | |
| FRANK BISIGNANO,[2] ) | |
| Commissioner, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

# ORDER

Plaintiff seeks judicial review of the denial by the Social Security Administration ("SSA") of his applications for disability insurance benefits and supplemental security income. The Commissioner has filed the administrative record ("AR"), Doc. 5, and both parties have briefed their positions, Docs. 12, 14.[3] For the reasons set forth below, the Court affirms the Commissioner's decision.

## I.  Procedural Background

Initially and on reconsideration, the SSA denied Plaintiff's applications for benefits. On May 6, 2024, an administrative law judge ("ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. AR 18-36. The

---

[1] The Court refers to Plaintiff by initials to protect Plaintiff's privacy because of the sensitive nature of medical and personal information disclosed in Social Security cases.

[2] Frank Bisignano is substituted as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[3] Citations to the parties' briefs reference the Court's ECF pagination. Citations to the AR reference the document's original pagination.

Appeals Council denied Plaintiff's request for review. AR 1-6. Accordingly, the ALJ's decision constitutes the Commissioner's final decision.

## II.     The ALJ's Decision

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step process); *see also* 20 C.F.R. §§ 404.1520 (same), 416.920 (same). The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 21. At step two, the ALJ determined that Plaintiff had the severe impairments of schizoaffective disorder, bipolar type; depression; anxiety; attention-deficit/hyperactivity disorder; degenerative disc disease; and obesity. AR 21. At step three, the ALJ found Plaintiff's impairments did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. AR 21-23.

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with additional limitations. AR 23-29. The ALJ then found that Plaintiff was unable to perform any past relevant work. AR 29.

Relying at the final step on the testimony of a vocational expert ("VE"), the ALJ found Plaintiff could perform other work existing in significant numbers in the national economy. AR 30-31. Therefore, the ALJ concluded that Plaintiff had not been under a disability, for purposes of the Social Security Act, from the alleged onset date through the date of the decision. AR 31.

### III.  Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020). Under such review, "common sense, not technical perfection, is [the Court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

In reviewing the agency's factual findings, the Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (citation modified). Instead, the Court "looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation modified). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (citation modified). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (citation modified). In addition to a lack of substantial evidence, "the agency's failure to apply the correct legal standards, or show [the Court] that it has done so, is also grounds for reversal." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

IV. **Analysis**

Plaintiff presents three claims of error:

1. The ALJ failed to perform a proper evaluation of certain medical opinions;

2. The ALJ failed to evaluate and account properly for Plaintiff's obesity; and

3. The ALJ's step-five findings are not supported by substantial evidence.

Doc. 12 at 3. The Court considers each allegation in turn.

A. **Medical opinions**

1. **CEs' records are not medical opinions**

Plaintiff first argues that the ALJ failed to evaluate properly the medical opinions of consultative examiners ("CEs", singularly "CE") Kim Sullivan, APRN, and Heather Kobel, PhD. Doc. 12 at 4-10. Social Security regulations set forth how the SSA is to consider medical opinions. 20 C.F.R. §§ 404.1520c, 416.920c. In considering a medical opinion, the agency is required to articulate how persuasive it finds the opinion to be, based in part on consideration of specific factors and including explanation regarding certain of those factors. *Id.* Plaintiff argues the ALJ erred in failing to explain her consideration of the factors with respect to the CEs' medical opinions. Doc. 12 at 4-5, 7.

As Plaintiff notes, with respect to the records from both Ms. Sullivan and Dr. Kobel, the ALJ found "neither of these sources provided an opinion about the claimant's functional abilities (other than a statement by Dr. Kobel that the claimant was capable of managing his own finances which is consistent with the record)." AR 29; *see also* Doc. 12 at 5, 7. Plaintiff argues that medical opinions "address diagnoses, and the nature and

4

severity of impairments, not just express functions," and, thus, the ALJ was incorrect in concluding the CEs did not provide medical opinions. Doc. 12 at 5 (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163-1166 (10th Cir. 2012)), 7-8. Plaintiff, however, is incorrect.

Under current agency regulations, a medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in specific work-related abilities. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).[4] However, Plaintiff does not point to any statements from the CEs regarding Plaintiff's functional abilities, *see id.*, and the Court did not find any in its review of the records, *see* AR 468-481. Rather, Plaintiff points to the CEs' diagnoses and some of their observations and findings. Doc. 12 at 5 (citing AR 471-72), 7-8 (citing AR 480). This type of evidence does not constitute a medical opinion but, instead, falls under the regulatory definition of other medical evidence. 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3). In contrast to medical opinions, there is no regulatory requirement that an ALJ evaluate the persuasiveness of other medical evidence. *See id.* §§ 404.1520c (including medical opinions, but not other medical evidence, in discussion of the agency's consideration of medical evidence), 416.920c (same).

---

[4] Plaintiff appears to rely on a prior version of the regulations that is applicable only to claims filed before March 27, 2017. *See* 20 C.F.R. §§ 404.1527(a), 416.927(a). The discussion in *Keyes-Zachary* also references the older version of the regulations. 695 F.3d at 1161 (citing 20 C.F.R. §§ 404.1527, 416.927, as well as SSR 06-03p, which also relies on 20 C.F.R. §§ 404.1527, 416.927 and has since been rescinded); *see also* Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, 2017 WL 3928298 (S.S.A. Mar. 27, 2017). Plaintiff filed his claims in August of 2022. AR 308, 312.

As such, Plaintiff has not shown error in the ALJ's determination that the CEs' medical records did not contain medical opinions. Plaintiff has not shown the ALJ (1) was required to consider those reports as medical opinions under the regulations or (2) erred in not doing so. *See Staheli v. Comm'r, SSA*, 84 F.4th 901, 907 (10th Cir. 2023) (finding doctor's "general statements about [the claimant's] prognosis were not a 'medical opinion' because they did not provide evidence concerning her ability to perform the specific demands of work activities" and, thus, the ALJ did not err in failing to evaluate the medical record as a medical opinion); *Roy o/b/o Helton v. Comm'r, SSA*, No. 22-5036, 2022 WL 17726702, at *3 (10th Cir. Dec. 16, 2022) (finding a doctor's notation of "clinical observations regarding the nature and severity of" the claimant's impairment was other medical evidence, not a medical opinion, and thus did not need to be evaluated under 20 C.F.R. §§ 404.1520c, 416.920c).

### 2. The ALJ was not required to further develop the record

Plaintiff alternatively argues that, if the CEs' medical records are deemed not to contain medical opinions, then the ALJ was required to recontact the CEs to request "the missing information and/or a revised report." Doc. 12 at 6-8. If a CE's report is "inadequate or incomplete," the ALJ will ask the CE to "furnish the missing information or prepare a revised report." 20 C.F.R. §§ 404.1519p(b), 416.919p(b). In determining whether a CE's report is inadequate or incomplete, the regulations set forth the specific factors an ALJ should consider. *Id.* §§ 404.1519p(a), 416.919p(a). These factors do not include whether the CE's report contained a medical opinion. *See id.* In fact, the regulations make clear that, although the SSA "will ordinarily request a medical opinion

6

as part of the consultative examination process, the absence of a medical opinion in a consultative examination report will not make the report incomplete." *Id.* §§ 404.1519n(c)(6), 416.919n(c)(6).

Plaintiff appears to assume the lack of a medical opinion from a CE automatically makes the CE's report inadequate or incomplete. *See* Doc. 12 at 6-8. Indeed, other than claiming that the CEs' reports did not contain medical opinions, Plaintiff presents no argument that the reports were inadequate or incomplete. *Id.* at 7 ("Given . . . [Ms. Sullivan's] report did not contain an adequate basis for decision making—i.e., the ability to perform basic work activities—the ALJ should have fulfilled her duty to develop the record fully and fairly and complied with 20 CFR §§ 404.1519p(b) and 416.919p(b)."); *id.* at 8 ("If Dr. Kobel did not provide the necessary opinions, it was the ALJ's duty to recontact her and obtain a report from her that provided information about [Plaintiff's] functional abilities in vocationally relevant terms and agency compliant language." (citation modified)).

Plaintiff has not established that the CEs' reports were inadequate or incomplete. *See* 20 C.F.R. §§ 404.1519n(c)(6), 416.919n(c)(6). As such, he has not established that the ALJ (1) was required to contact the CEs to ask for additional information or a revised report or (2) erred in not doing so. *See Craig P. v. Kijakazi*, No. 2:22-CV-00254-CMR, 2023 WL 5613800, at *5-6 (D. Utah Aug. 30, 2023) (finding the ALJ had no duty to recontact a CE when CE's report was neither inadequate nor incomplete); *Karen Jean M. v. Saul*, No. CV 19-2455-JWL, 2020 WL 5057488, at *3 (D. Kan. Aug. 27, 2020) (finding that CE reports

7

that did not contain medical opinions were not incomplete and the ALJ was not required to contact the CEs for additional information or revised reports).[5]

### 3. No discrepancy between psychological consultants' opinions and limitation found by ALJ

Plaintiff relies on the opinions of state agency psychological consultants Ryan Scott, PhD, and James Scott, PsyD, and argues that the ALJ (1) failed to account for limitations found by these physicians, Doc. 12 at 8-10, and (2) "failed to explain why her hypothetical question and the RFC differ from their opinions," *id*. at 8.

#### a. Public contact

On initial review of Plaintiff's applications, Dr. Ryan Scott found Plaintiff's social interaction limitations to include that he "can only tolerate incidental/occasional public contact." AR 165, 175. On reconsideration, Dr. James Scott found the same limitation. AR 185, 195. The ALJ "accounted for evidence of the claimant's mental symptoms" in part by finding that Plaintiff "can have no more than occasional interaction with the public," which is reflected in Plaintiff's RFC. AR 23, 27. Additionally, during the administrative hearing, the ALJ included in her hypothetical to the VE a limitation of "occasional interaction with the public." AR 153.

---

[5] Plaintiff additionally references the regulations regarding insufficiency or inconsistency of evidence, but he does not develop an argument that the CEs' reports were insufficient or inconsistent. Doc. 12 at 6 (citing 20 C.F.R. §§ 404.1520b(b), 416.920b(b)). The Court declines to consider arguments that "are inadequately presented." *Meek v. Martin*, 74 F.4th 1223, 1276 (10th Cir. 2023).

Plaintiff argues that the psychological consultants' opinions include two different limitations on Plaintiff's ability to interact with the public: incidental, which goes to the quality of the interactions, and occasional, which goes to the quantity of time of the interactions. Doc. 12 at 8. Plaintiff cites to an online dictionary for the definition of incidental, but does not provide case law to support his argument that incidental interaction and occasional interaction merit separate limitations. *Id.* at 8-9.

The narrative section of a claimant's mental residual functional capacity evaluation is intended to discuss and provide information regarding a claimant's mental functioning and limitations. An ALJ must consider this discussion, but she is not required to "repeat [it] verbatim" in either her "RFC finding or the corresponding hypothetical to the VE." *Carver v. Colvin*, 600 F. App'x 616, 619-20 (10th Cir. 2015). Instead, an ALJ may "sufficiently capture[] the essence" of the functional limitations, as "to conclude otherwise would parse the ALJ's language too finely." *Id.* (citation modified).

Here, the Court finds that the ALJ's limitation of "no more than occasional interaction with the public" sufficiently captures the social interaction limitations found by the doctors. *See Burnett v. Kijakazi*, No. CIV-20-848-AMG, 2022 WL 949965, at *4 (W.D. Okla. Mar. 29, 2022) (finding the ALJ's limitation to occasional interaction with coworkers and supervisors adequately incorporated the doctors' limitation of superficial contact with supervisors and coworkers); *C.W. v. O'Malley*, No. 1:22-CV-02075-SBP, 2024 WL 4227688, at *6 (D. Colo. Sept. 17, 2024) (same); *Ganer v. Berryhill*, No. CIV-16-169 LAM, 2017 WL 3610537, at *6 (D.N.M. Feb. 23, 2017) (finding an RFC limiting the claimant to "occasional" interaction with supervisors and coworkers sufficiently

9

incorporated doctor's conclusion that the claimant could interact appropriately with coworkers and supervisors on an "incidental basis" as "the [c]ourt [was] not persuaded that there is a significant difference between 'incidental' and 'occasional' interaction" regarding a claimant's "social limitations"). As such, the Court finds no error.

### b.     Changes in the work setting

Dr. Ryan Scott also found Plaintiff could "adapt to [a] work setting and some changes in the work setting." AR 165, 175. On reconsideration, Dr. James Scott found the same limitations. AR 185, 195. The ALJ "accounted for evidence of the claimant's mental symptoms" in part by finding that Plaintiff was "limited to simple, routine, repetitive work in a routine work setting," which is reflected in Plaintiff's RFC. AR 23, 27. Additionally, during the administrative hearing, the ALJ included in her hypothetical to the VE a limitation of performing "simple, routine, and repetitive work in a routine work setting." AR 153.

The Court perceives no material difference between the ALJ's limitation of a "simple, routine, repetitive work in a routine work setting" and the doctors' finding that Plaintiff could "adapt to [a] work setting and some changes in the work setting." Nor does Plaintiff explain why the RFC's limitation fails to capture sufficiently the limitation found by the doctors. *See* Doc. 12 at 9. Instead, Plaintiff argues that the limitation of adapting to only "some changes in the work setting" "is a limitation necessary for performance of unskilled work and is defined as being 'usually strict,'" citing to "*Featheree*" v. Saul and POMS 25020.010.B.3. Doc. 12 at 9. The Court has reviewed the cited sources, and it is not the ability to respond to changes in a work setting that is "usually strict." *Fatheree v.*

10

*Saul*, No. CV-19-704 JFR, 2020 WL 3448082, at *10 (D.N.M. June 24, 2020); POMS 25020.010.B.3(i), (m). Instead, this statement describes a claimant's ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods"—a requirement not at issue here. *Fatheree*, 2020 WL 3448082, at *10; POMS 25020.010.B.3(i). The Court finds Plaintiff's argument unpersuasive.

**B.     Obesity**

At step two, the ALJ found that Plaintiff's obesity was a severe impairment. AR 21. In determining Plaintiff's RFC, the ALJ noted physical examinations finding that Plaintiff was obese, AR 25-26, and "accounted for evidence of the claimant's physical impairments" including degenerative disc disease exacerbated by mild obesity, AR 27. Plaintiff challenges the ALJ's consideration of his obesity, asserting she "failed to analyze and discuss [his] obesity and its effects in combination with all his other impairments." Doc. 12 at 10. Plaintiff further asserts that the ALJ's finding that he can "perform light work that requires standing and/or walking six hours in an eight-hour workday and lifting and/or carrying 10 pounds frequently and 20 pounds occasionally" "is overwhelmed by the evidence and defies common sense." *Id*. at 12. Plaintiff, however, does not provide citation to such overwhelming evidence. Though Plaintiff cites to record notations that he is overweight and that he complained of back pain, he provides no evidence that his obesity resulted in any limitations greater than those found by the ALJ. *See id*. at 13 (citing to Plaintiff's weight at AR 27, 523, 604, and 618; citing to Plaintiff's complaints of back pain

at AR 471, 479, 524, 538, 605, 619); *see also generally id*. at 10-14.  At most, Plaintiff notes potential effects of obesity that could affect him.  *Id.* at 13.

Plaintiff argues the Court should "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Id.* at 11 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005)).  But it is not the Court's "obligation to search the record and construct a party's arguments."  *Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016).  Rather, "the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability."  *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (citation modified); *see also Hackett v. Barnhart,* 395 F.3d 1168, 1171 (10th Cir. 2005) ("The claimant bears the burden of establishing a prima facie case of disability at steps one through four."); *Howard v. Barnhart,* 379 F.3d 945, 948 (10th Cir. 2004) (explaining the plaintiff must provide evidence of his functional limitations).

Despite Plaintiff's assertion to the contrary, the ALJ did discuss Plaintiff's obesity.  Doc. 12 at 10; AR 25-27.  And the Tenth Circuit does not require an ALJ to "note the absence of any evidence that [his] obesity resulted in additional functional limitations or exacerbated any other impairment."  *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015); *see also* SSR 19-2p, 2019 WL 2374244, at 4 (discussing the SSA's evaluation of the limiting effects of a claimant's obesity in determining the RFC).  Instead, as discussed above, it is Plaintiff's burden to establish functional limitations, which Plaintiff has not done.  Accordingly, the Court finds no error in the ALJ's consideration of Plaintiff's

obesity. *See Smith*, 625 F. App'x at 899 (rejecting the claimant's argument that the ALJ did not adequately consider the effects of obesity when the ALJ found obesity was a severe impairment but the claimant had "not shown that her obesity alone, or in combination with other impairments, resulted in any further limitations"); *Anderson v. Dudek*, No. CIV-24-00047-JD, 2025 WL 1000006, at *4 (W.D. Okla. Apr. 3, 2025) (finding no error in the ALJ's consideration of the plaintiff's obesity when the ALJ found obesity to be a severe impairment and considered it in formulating the RFC, and the plaintiff did "not identify what effects obesity has upon her that were part of the record that the [ALJ] did not consider when determining her RFC"); *see also Kirkpatrick*, 663 F. App'x at 650 ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record.").

### C. Step-five findings

At step five, the ALJ relied on the VE's testimony to find Plaintiff could perform the requirements of representative occupations such as cleaner, parking lot attendant, and inspector. AR 30. Plaintiff alleges the ALJ erred in doing so because (1) her hypothetical questions did not include all limitations, and (2) the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT").

#### 1. Hypothetical questions

Plaintiff contends that the ALJ's hypothetical question to the VE was "flawed, failing to properly evaluate all the evidence and to include all appropriate limitations." Doc. 12 at 14. Plaintiff relies on his previous arguments and does not point to any limitations established in the record that were not included in the RFC. *See id.* A hypothetical posed to the VE is sufficient if "it contained all of the limitations found to

13

exist by the ALJ." *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000). Additionally, when a hypothetical question includes "all (and only) those impairments borne out by the evidentiary record," *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995), a VE's testimony in response provides substantial evidence to support the ALJ's step-five determination. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996); *see also Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected plaintiff's challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."). Accordingly, this argument is without merit.

### 2.   Conflict with the DOT

Plaintiff additionally argues that both cleaner and parking lot attendant require more contact with the public than the occasional interaction in Plaintiff's RFC. Doc. 12 at 15. As to a cleaner's public interaction, Plaintiff argues that "it requires, as a primary job duty, checking wraps and rendering personal assistance to patrons." *Id.* at 15. Plaintiff is correct that the occupation's definition includes those tasks among its list of possible tasks. DOT 323.687-014 (Cleaner, Housekeeping), 1991 WL 672783 (4th rev. ed. 1991). Plaintiff is not correct that anyone performing the occupation of cleaner is required to check wraps or render personal assistance. *See id.* ("Cleans rooms and halls in commercial establishments . . . performing any combination of the following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs

14


drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title."). Additionally, the worker function ratings of the tasks performed in the occupation indicate that a cleaner functions in relation to people through taking instructions or helping, but the level at which this is done is "Not Significant." *Id.*; *see also* Parts of the Occupational Definition, 1991 WL 645965. Therefore, Plaintiff has not established that the ALJ erred in relying on the VE's testimony to find Plaintiff could perform the requirements of the representative occupation of cleaner.

Plaintiff is correct, though, that a parking lot attendant in the DOT involves serving people at a significant level. DOT 915.473-010 (Parking-lot Attendant), 1991 WL 672783 (4th rev. ed. 1991). Additionally, the VE testified that parking lot attendant is "someone who's standing outside of a parking lot for . . . special events or things like that collecting parking fees but [is] also responsible for cleaning the parking lot and may have to park cars." AR 156. The Court agrees that the amount of social interaction specified in both the DOT and in the VE's testimony appears incompatible with restrictions on the social interactions in Plaintiff's RFC. As such, it was error for the ALJ to rely on the occupation of parking lot attendant for the step-five finding of nondisability.[6]

The Court, however, finds this error to be harmless. Per the VE's testimony, the occupations of cleaner and inspector together offer 508,962 jobs in the national economy.

---

[6] Plaintiff also argues that parking lot attendant requires a reasoning level of 2, which requires the ability to follow detailed instructions and conflicts with Plaintiff's limitation to simple, routine, and repetitive work. Doc. 12 at 15. Because the Court agrees with Plaintiff on the issue of public interaction, it is unnecessary to address this issue.

AR 30, 153. Because these two occupations would support the ALJ's step-five conclusion, the ALJ's error in relying on the occupation of parking lot attendant is harmless and reversal is not required. *See, e.g.*, *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (finding harmless error when, after disregarding two occupations cited by the ALJ, a total of 152,000 jobs remained in the national economy); *see also Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (even assuming two of three jobs relied upon by the ALJ were erroneous, substantial evidence showed the claimant could do the third job, which existed in significant numbers in the national economy).[7]

## V.    Conclusion

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision. A separate judgment shall be entered.

**IT IS SO ORDERED** this 26th day of September, 2025.

_____
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE

---

[7] Moreover, even if the Court were to accept Plaintiff's argument that the ALJ erred in relying on the VE's testimony regarding the occupation of cleaner, because 122,475 jobs exist in the national economy for the occupation of inspector, any such error would also be harmless. AR 30, 153; *see, e.g., Evans v. Colvin*, 640 F. App'x 731, 736-37 (10th Cir. 2016) (explaining that the Commissioner was substantially justified in arguing for harmless error based on 18,831 remaining jobs in the national economy).